UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-61100-CIV-COHN/SELTZER

THE INSURANCE COMPANY OF THE
STATE OF PENNSYLVANIA,

    Petitioner,

vs.

MATTHEW LYONS, DWIGHT GRANT,
KARLA HOLMES, JULIO GABRIN,
JUSTIN ROWINSKY, et al,

    Respondents.
_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

THIS CAUSE came before the Court for nonjury trial on September 22, 2008. Petitioner The Insurance Company of the State of Pennsylvania ("Petitioner" or "Insurer") seeks a declaratory judgment of no coverage regarding an automobile insurance policy issued to Respondent Matthew Lyons ("Lyons"). Lyons filed a counterclaim for a declaratory judgment of coverage and for breach of contract damages for the total loss of his vehicle. Three other Respondents, Dwight Grant ("Grant"), Julia Gabrin ("Gabrin"), and Justin Rowinsky ("Rowinsky") have filed Answers to the Insurer's Petition.

The Court has considered the testimony and credibility of the only two witnesses, Matthew Lyons, Respondent, and Eric Meier, Petitioner's representative, as well as the exhibits and arguments presented by all parties at trial, the applicable law and is duly advised in the premises. Accordingly, pursuant to Rule 52 of the Federal Rules of Civil Procedure, the Court issues the following Findings of Fact and Conclusions of Law.

## I. FINDINGS OF FACT[1]

1. Matthew Lyons obtained automobile insurance coverage from Petitioner on May 5, 2005.

2. The application process took place over the phone, with Lyons giving his full address and telephone information to a representative of Petitioner.

3. An employee of Petitioner typed Lyons' personal information into its computer system, including his name, address, phone number, and date of birth. Petitioner's Exhibit 3.

4. At the time of this initial telephone conversation, the Petitioner typed in Mr. Lyons' street address as "1224 NE 16th," without the complete information of 1224 NE 16th "Ave." Petitioner's Exhibit 3.

5. Lyons testified that he would always give the full address including the word "avenue" when giving his address to complete a transaction over the phone.

6. Lyons paid his initial premium deposit by credit card. Petitioner's Exhibit 2 at p. 26, Item #4.

7. On May 13, 2005, Petitioner mailed a pre-printed form with the information taken over the phone to Lyons for him to sign and return, seeking additional information such as his evening phone number, Social Security number, and email address.

8. This mail was returned to Petitioner. Grant Exhibit 2; Comment 38 in Petitioner's Exhibit 2 at p. 8.

9. Lyons' file was flagged at that time by Petitioner for the next employee who had

---

[1] Any of the foregoing factual findings that may represent conclusions of law are adopted as conclusions of law.

contact with Lyons to update his address.  Comment 38.

10. During the underwriting process, a credit score from a credit bureau would have been obtained on Mr. Lyons.   Testimony of Eric Meier.

11. Because vehicle registration information was requested by Petitioner in the initial letter to Mr. Lyons, after an agent attempted to call Mr. Lyons but was unable to get through or leave a voicemail, Petitioner was not going to pursue Lyons' business.  Comments 39-41 in Petitioner's Exhibit 2.

12. On July 19, 2005, Lyons called Petitioner regarding the amount of his premium. He was advised he needed to send in the vehicle information and signed application, which he retrieved from Petitioner's website.  Id., Comment 36.

13. Lyons apparently told customer service that he probably did not receive the correspondence because it went to his postal box, which he requested to be deleted from the account, and his home zip code was adjusted accordingly.  Id.

14. There is no indication in the file history maintained by Petitioner that his street address was verified at this time, even though it was the only address then used by Petitioner.  Petitioner's Exhibit 2.

15. Lyons signed the application on July 20, 2005, without realizing that his address lacked the word "Avenue."  He faxed back the requested information on July 27, 2005, and his policy began, backdated to May 5, 2005.  Petitioner's Exhibit 3; Comments 33-35 in Petitioner's Exhibit 2.

16.  Lyons added his evening phone number, email address, and Social Security number to the application.   The evening phone number was not inputted correctly by Petitioner.  Petitioner's Exhibit 3.

3

17. On August 18, 2005, another correspondence from Petitioner to Lyons was returned as undeliverable. Petitioner's Exhibit 2, Comment 31.

18. Eric Meier testified that addresses are supposed to be verified through either the post office or by telephoning the customer.

19. On October 16, 2005, Lyons contacted Petitioner seeking new ID cards. The ID cards were faxed to him at 954-524-6968, his home number. Id., Comments 29-30.

20. Lyons has a combination telephone/fax machine at his home.

21. Petitioner did not verify Lyons' mailing address at this time.

22. Petitioner does not send unsolicited correspondence by fax.

23. Petitioner had Mr. Lyons' home number listed as only a fax number, when in fact this was his home telephone number.

24. Lyons' bill for the premium due in early November 2005 was returned to Petitioner. Grant Exhibit 5.

25. On November 11, 2005, Lyons called in and was advised his "carco" vehicle inspection report was due. Petitioner Exhibit 2, Comment 28.

26. On November 16, 2005, Petitioner made an outbound call to confirm that Lyons obtained the inspection report, however, his file was noted that his phone numbers were invalid. Id., Comment 27.

27. On November 17, 2005, returned mail was again logged in by Petitioner. In addition, Lyons' phone numbers were noted as incorrect. His file was flagged so if Lyons called in, Petitioner's customer service staff was to verify his address. Id., Comment 26.

28. On November 18, 2005, Petitioner received the "carco" report. Id., Comment 25.

29. The "carco" inspection report contained the same omission of "avenue" from Lyons' mailing address. The testimony at trial indicated that this form was not filled out by Lyons, though he signed the report acknowledging the inspection took place. Petitioner's Exhibit 4.

30. On January 23, 2006, Lyons called Petitioner regarding his premium payment and new ID cards, which were faxed to him at his home telephone number. Petitioner Exhibit 3, Comments 22-23. Once again, there is no evidence that his address or phone number information was verified during this phone contact.

31. Lyons paid his renewal premium, due November 6, 2005, over the phone by ACH check payment on January 23, 2006. Id. at p. 25, Item #'s 20-22.

32. Lyons paid his next renewal premium on May 7, 2006 by credit card. Id. at 25, Item # 25. There is no evidence of returned mail or telephone contact between January of 2006 and early September of 2006.

33. Meier testified that Petitioner's records indicate that of 15 pieces of mail sent by Petitioner, seven (7) were returned.

34. On September 12, 2006, Lyons called Petitioner to have his declaration page faxed to his dealership as he lost his car keys and needed new ones. Petitioner's Exhibit 2, pp. 4-5, Comments 16-20.

35. On September 29, 2006, mail regarding a Security Advantage Kit sent to Lyons from Petitioner was returned. Id., Comment 15; Grant Exhibit 7.[2]

---

[2] It is likely that the returned mail envelope in Grant Exhibit 7, dated September 13, 2006, contained a policy renewal notice and ID cards, rather than the Security Advantage Kit mentioned in Comment 15. There was no testimony discussing a connection between Grant Exhibit 7 and Comment 15.

36. Petitioner attempted to contact Lyons by telephone, per their policy regarding returned mail, but they could not reach him because they had invalid telephone numbers in his file, while his valid phone number was only listed as a fax number.  Petitioner again flagged as invalid Lyons' telephone numbers, plus the notation: "**************PLEASE VERIFY ADDRESS*********."  Id., Comment 15 (emphasis in original).

37. Meier testified that Petitioner's employees should have seen this note and attempted to verify the address on the next contact per the return mail policy. Petitioner's Exhibit 12.

38. On November 27, 2006, Lyons paid the renewal premium due on November 6, 2006 by ACH electronic check payment, apparently when Lyons called in. Petitioner's Exhibit 2, Comment 13 and p. 24, Item # 29.

39. Petitioner did not verify Lyons' address when taking his payment.

40. On January 29, 2007, Petitioner's notes indicate that Lyons "had Carla his girlfriend ask for id cards . . . faxed cards."  The ID Card was faxed to 954-524-6968, Lyons' home telephone number.  Id., Comments 11-12.

41. Again, there is no indication that Petitioner's customer service staff followed the notes and verified an address or phone number.[3]

42. Lyons' telephone number was publicly listed at his publicly listed address where he had lived for many years with the same telephone number, 954-524-6968.

43. Petitioner's customer service staff had the ability to look up Lyons' correct

---

[3] Respondents assert that Petitioner could have written a note regarding the address and telephone problem on the blank space on the page containing the faxed ID cards on any of the occasions that ID cards were requested.

6

telephone number and address.

44. On March 8, 2007, Petitioner mailed a renewal premium notice to Lyons that was returned as undeliverable on March 14, 2007.  Petitioner's Exhibits 5-6; Grant Exhibit 11.

45. On March 28, 2007, Petitioner's customer service notes reflect the returned mail. Attempts were made to telephone Lyons with no contact, the file was again flagged to indicate that Lyons' address needs to be updated, but Petitioner resent the renewal notice to the same address.  Petitioner's Exhibit 2, Comment 10.

46. On May 10, 2007, Petitioner mailed an Offer to Reinstate and a Notice of Cancellation to the same insufficient address of "1224 Northeast 16th." Petitioner's Exhibits 7-9.

47. The Offer to Reinstate was open until May 24, 2007.  Petitioner's Exhibit 7.

48. This envelope containing both the Offer to Reinstate and the Notice of Cancellation was returned to Petitioner on May 18, 2007, for insufficient address by the Postal Service.  Petitioner's Exhibit 9, Grant Exhibit 14.

49. The accident in question occurred on May 19, 2007.  Lyons promptly reported the accident to Petitioner.  When reporting the claim, Lyons was not asked about paying his premium to keep his policy from lapsing on May 24.  If Petitioner's representative had asked, Lyons testified that he would have paid the premium as he had been doing for two years.  He was never made aware through the two year period that a problem with his address existed.  Testimony of Matthew Lyons.

50. On May 22, 2007, Petitioner mailed to Lyons, <u>at his correct address</u>, a Reservation

of Rights Letter seeking verification of his coverage.  Grant Exhibit 15.

51.  On May 30, 2007, Lyons called Petitioner about never receiving the prior bill and was advised that the policy was cancelled on May 6, 2007, and he was ineligible for reinstatement due to his claim.  Petitioner's notes indicate that there was "long history of returned mail, and [Lyons] never called to update address."  Petitioner's Exhibit 2, Comment 9.

52.  The accident in this case occurred 13 days after the purported expiration and Lyons offered to pay the premium no more than 22 days after expiration.

53.  Lyons never received the March or May 2007 renewal premium notice, nor the Notice of Cancellation.

## II.  CONCLUSIONS OF LAW[4]

The automobile insurance policy in question is governed by the terms of the insurance contract, Florida Statutes and case law.  The insurance policy language describes the terms for cancellation during the policy period, in which a cancellation notice for nonpayment of premium may be mailed to "the named insured shown on your Declarations Page at the last known address shown in our records."  Policy, Termination Section, Cancellation § A.2 (p. 22 of Policy), Petitioner's Exhibit 1.  A separate provision for Automatic Termination states that "if we offer to renew or continue your policy after you or your representative do no[t] [sic] accept by making timely payment of the premium due, this policy will automatically terminate at the end of the current policy period."  Id., § C.1.  The policy also states that sufficient proof of notice is "United States postal proof of mailing of any notice to the named insured at the address shown in our records."  Proof of

---

[4] Any of the foregoing conclusions of law that may represent factual findings are adopted as factual findings.

Notice at p. 21 of Policy.

The relevant statutes require that Petitioner mail to Lyons "at least 30 days advance notice of the renewal premium for the policy." Fla. Stat. § 627.7277(2). In addition, a notice of cancellation for nonpayment of premium must be mailed to the named insured at least ten days prior to the effective date of cancellation. Fla. Stat. § 627.728(3)(a). However, this requirement does not apply to "nonrenewal." Fla. Stat. § 627.728(3)(b). No notice is required for refusal to renew in the case of nonpayment of premium. § 627.728(4)(a)(2). However, a failure to provide notice in compliance with § 627.7277 results in an extension of coverage at the existing rates until 30 days after the notice is given. Fla. Stat. § 627.7277(3).

Consistent with the policy language described above, the statutory provision for sufficient proof of notice states that "United States postal proof of mailing or certified or registered mailing of notice of cancellation. . . to the named insured at the address shown in the policy shall be sufficient proof of notice." Fla. Stat. § 627.728(5). In this case, Petitioner cannot show United States postal proof of mailing as defined in the Policy and statutes, because Petitioner did not send its mail certified or registered, but rather has an employee bring mail to the post office and then self-certify that those letters were mailed. Petitioner's Exhibit 2, pp. 34-37; Testimony of Eric Meier. This method is not recognized by the Florida courts as "United States proof of mailing," because it fails to comply with postal regulations requiring signature of a postal employee. Aries Insurance Co. v. Cayre, 785 So.2d 656, 658-59 (Fla. Dist. Ct. App. 2001).[5]  Lyons never received the

---

[5] The present case can be distinguished from Dairyland Ins. Co. v. Crews, 2006 WL 4540541 (M.D.Fla. Dec. 7, 2006), wherein no details of the "Certificate of Mailing" relied upon by the insurance company and the court are discussed, and, the accident in question occurred after the date the overdue premium was due.

9

notices that were sent because the word "Avenue" was omitted from his address.

Petitioner argues that it fulfilled its statutory duty to timely mail a renewal premium notice to the insured "at the address shown in the policy." Petitioner asserts that this mailing, despite being sent to an address that had returned mail problems, fulfilled its duty because the statutory scheme places the duty of updating an insured's address upon the insured. In contrast to other insurance notice statutes, Petitioner notes that the notice statute at issue here merely requires notice to the "address shown in the policy," rather than to the insured's last known address. Petitioner cautions the Court not to read words into a statute requiring an insurer to have a duty to investigate whether this address shown in the policy is accurate. Petitioner's Proposed Findings of Fact and Conclusions of Law at pp. 12-13 [DE 108].

Petitioner cites to Insurance Co. of No. America v. Sunrise Catering, wherein the insurer's notice of cancellation was sent to "Hilltop Drive," as listed on the application, rather than "Hilltop Road," the correct address. 447 So.2d 431, 432 (Fla. Dist. Ct. App. 1984). The court concluded that because the insurer had proof of mailing in sufficient compliance with the relevant Workers' Compensation statutes, nonreceipt was irrelevant. However, in the case at bar, there is insufficient proof of mailing to comply with the statute, thus distinguishing Sunrise Catering.

Respondents assert that this Court should follow Tench v. American Reliance Ins. Co., 671 So.2d 801 (Fla. Dist. Ct. App. 1996), wherein the Court construed the homeowner's insurance statutes to require the insurer to take further steps to ensure notice of cancellation when it knew that the address on record of the insured property was vacant, and a good address for the insured was in its files, or those of the independent

10

insurance agent.

The answer to the question posed by Petitioner regarding the source of an insurer's duty regarding the correctness of the policy address is the statute itself.  The Court need not read any words into the statute under the facts of this case.  Petitioner knew from the first month of coverage in May of 2005 that there was a problem with the address.  The notes throughout Lyons' customer file indicate that Petitioner knew its address for him was incorrect and failed on several occasions to follow its own procedures to inquire about his address when Lyons called in to customer service.  Petitioner was on actual notice that a problem existed with Lyons' receipt of mail, as up to March of 2007, five of thirteen mailings had been returned.  Petitioner's own mistakes in the initial inputting of Lyons' address and telephone information, combined with its mistaken classification of Lyons' correct home number as a fax number and its failure to never verify Lyons' address despite numerous opportunities to do cannot be ignored.  Petitioner was responsible for the failure of mail to go through to the "address of record" that Petitioner had failed to correctly capture from its initial telephone solicitation of its insured.  The statutory notice duty cannot be read in a vacuum.  Under the facts of this case, Petitioner failed to fulfill its duty to send a premium renewal notice to the insured's correct address.

Therefore, pursuant to § 627.7277(3), notice was not properly given until after the accident at issue in this case, meaning that the Policy was extended by statute at the existing rates.  The Court concludes that Respondents are entitled to a declaratory judgment that claims resulting from the May 19, 2007 accident are covered under the Policy.  In addition, Lyons' is entitled to judgment on his counter-claim for breach of

contract for his property damage claim of $15,207.86

## CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that a separate Final Judgment will be entered herein consistent with the Court's Findings of Fact and Conclusions of Law.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 26th day of September, 2008.

JAMES I. COHN
United States District Judge

copies to:

counsel of record on CM/ECF